UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FRACTUS, S.A.<br><br>Plaintiffs,<br><br>v.<br><br>AT&T MOBILITY, LLC, et al.<br><br>Defendants. | Civil Action No. 19-mc-91097<br><br>Principal case pending in the United States District Court for the Eastern District of Texas, Marshall Division; Case No. 2:18-cv-00135-JRG |

**NON-PARTY AMERICAN TOWER CORPORATION'S MOTION TO STRIKE FRACTUS, S.A.'S CROSS-MOTION TO COMPEL AND MOTION TO EXPEDITE BRIEFING, AND, IN THE ALTERNATIVE, MEMORANDUM IN SUPPORT OF ITS OPPOSITION TO THE MOTION TO EXPEDITE BRIEFING**

Non-Party American Tower Corporation ("ATC") respectfully moves the Court to strike both Plaintiff Fractus, S.A.'s ("Fractus's") Cross-Motion to Compel (ECF No. 8) and Motion to Expedite Briefing (ECF No. 12) (the "Motions") as both fail to satisfy Local Rule 7.1's meet-and-confer requirement in both letter and spirit because counsel for Fractus never conferred with counsel for ATC. In the alternative, ATC respectfully requests that the Court deny the Motion to Expedite Briefing because the schedule proposed would cause prejudice to ATC and is simply fundamentally unfair. Specifically, Fractus took more than two full weeks to respond to the Motion to Quash (ECF No. 1) and now is trying to force non-party ATC to respond to its Cross-Motion to Compel—which raises several new issues that ATC will need time to analyze—in what is effectively two days, all because of a discovery deadline in a lawsuit ATC is not a party to and in which it has no interest.

## BACKGROUND

Unfortunately, a somewhat lengthy recitation of the facts underlying this matter is necessary to illustrate how Fractus has attempted to manufacture an emergency to extract as much as it can from non-party ATC.

### I. The September Subpoena

On September 10, 2018, Plaintiff Fractus, S.A. ("Fractus") served non-party ATC with a Third-Party Subpoena to Produce Documents, Information, or Objects (the "September Subpoena"). Exhibit B to ATC's Mot. To Quash (ECF No. 1). ATC is not now, nor has it ever been, a party to or interested in the above-captioned litigation. Exhibit C to ATC's Mot. to Quash (ECF No. 1) ("Bergendahl Decl."), ¶ 3. By way of the September Subpoena, Fractus essentially sought any and all documents within ATC's possession, custody, or control relating to the defendants in the litigation. These defendants are AT&T Mobility, LLC ("AT&T"); Sprint Communications Company, L.P., Et al. ("Sprint"); T-Mobile U.S., Inc., Et al. ("T-Mobile"); and Cellco Partnership d/b/a Verizon Wireless ("Verizon") (collectively, the "Defendants"). Further, the September Subpoena sought a host of documents completely unrelated to the Defendants and irrelevant to this case. After much wrangling over this over-broad and burdensome subpoena—which involved counsel for ATC repeatedly pointing out to Fractus's counsel that much, if not all, of the information sought by the September Subpoena would be discoverable via the Defendants—Fractus stated that it understood that the Defendants should have the documents and be able to produce them. *Id.*, ¶ 4. Accordingly, Fractus agreed to indefinitely suspend the response deadline for the September Subpoena. *Id.*

## II. The March Subpoena

Then, on March 1, 2019, with less than a day's prior notice to ATC or its counsel, Fractus served on it a Third-Party Subpoena *Duces Tecum* (the "March Subpoena"). Exhibit A to ATC's Mot. To Quash (ECF No. 1). The March Subpoena sought to depose a corporate representative of ATC in Boston, Massachusetts on March 28, 2019 on a broad range of topics essentially encompassing every detail of ATC's business relationship with each and every Defendant. In addition, the March Subpoena seeks to compel the corporate deponent to bring with him or her a massive amount of documents to the deposition. The March Subpoena is slightly narrower than the September Subpoena, but responding to it would still impose an undue burden on ATC. *See* ATC's Mot. To Quash (ECF No. 1).

The deadline to respond and object to the March Subpoena was March 15, 2019. Prior to this deadline counsel for ATC attempted to work with counsel for Fractus, and sought an extension. Fractus refused to extend the deadline and offered only to move it back one week if ATC produced a huge array of documents. Bergendahl Decl., ¶ 8. As a justification for Fractus's position, Fractus stated that its discovery deadline was April 15, 2019. *See id*., ¶ 9.

## III. The Motion to Quash and Fractus's Response.

Facing what amounted to discovery extortion, ATC turned to the Court and filed a Motion to Quash on March 15, 2019. (ECF No. 1). Pursuant to Local Rule 7.1(b)(2), the deadline for Fractus to respond to the Motion to Quash was March 29, 2019. Fractus missed this deadline and

effectively filed its Opposition (which is combined with its Cross-Motion to Compel) on April 1, 2019.[1] In addition, Fractus filed its Motion to Expedite Briefing on April 1, 2019.[2]

**IV. Fractus's Failure to Meet and Confer**

During the two-week period between the filing of the Motion to Quash and Fractus's filing of its Motions, Fractus did not grant ATC the courtesy of conferring with it regarding its Motions despite counsel for ATC's willingness to do so.

On the morning of March 18, counsel for Fractus and counsel for ATC exchanged missed telephone calls. Declaration of Allison O'Neil ("O'Neil Decl."), ¶¶ 3-4. Counsel for ATC sent a follow-up email indicating her availability on March 18 and March 19. *Id.*, ¶ 4. Counsel for Fractus replied asking if a specific time on March 18 worked; counsel for ATC replied that the proposed time did not work as she would be on a plane but offered several other times when she was available; counsel for Fractus then immediately called counsel for ATC while she was in a windy, outdoor location with no ability to get to a quiet, indoor location and while she had no access to any of the relevant documents. *Id.*, ¶¶ 5-9. Following this conversation—which was forced to be brief due to counsel for ATC's location—counsel for Fractus sent an email accusing counsel for ATC of raising her voice. *Id.*, ¶ 10. This email did not propose any new time to speak. *Id.* Counsel for ATC replied to this email indicating when she would be available for a call at a specific time "or another time that works for both of us." *Id.*, ¶ 11. Counsel for Fractus replied to

---

[1] According to the Notice of Electronic Filing sent to counsel through the Court's ECF system, the combined Opposition and Cross-Motion to Compel were submitted at 6:18 p.m. on March 29. Declaration of Allison O'Neil ("O'Neil Decl."), ¶ 18. Local Rule 5.4(d) requires that all filings be submitted electronically "prior to 6:00 p.m. to be considered timely filed that day." Accordingly, these documents were effectively filed on April 1, 2019. ATC reserves the right to object to the Opposition to the Motion to Quash because it is untimely.

[2] According to the Notice of Electronic Filing sent to counsel, the Motion to Expedite Briefing was submitted at 8:57 p.m. on March 29. O'Neil Decl., ¶ 19.

this email stating she had one half-hour window available the next day but did not attempt to contact counsel for ATC during the times when she had indicated she was available. *Id*., ¶ 12.

Counsel for Fractus did not contact counsel for ATC again until approximately 4:30 p.m. on Friday, March 29 (*i.e*., within 90 minutes of the filing deadline for any opposition to the Motion to Quash). *Id*., ¶ 13. Counsel for Fractus left a voicemail, and counsel for ATC returned the call within a few minutes but that call was not answered or returned. *Id*., ¶ 14. Instead, counsel for Fractus sent an email indicating that conferring on Fractus's Motions would essentially be futile and that Fractus intended to file the motions as drafted. *Id*., ¶¶ 15-16. Fractus then filed its Cross-Motion to Compel and Motion to Expedite without making any further attempt to contact counsel for ATC. *Id*., ¶ 17. The Local Rule 7.1 Certification on both of these Motions state that "counsel for Fractus *attempted* in good faith to meet-and-confer." (ECF Nos. 8, 12) (emphasis supplied).

**V. Other Litigation**

ATC would like to call the Court's attention to the fact that ATC is not the only entity being harassed by Fractus's burdensome attempts to extract discovery from non-parties rather than seeking the same information from the Defendants in the underlying litigation. A dispute remarkably similar to the instant one is currently unfolding in the Southern District of New York. *See Fractus, S.A. v. AT&T Mobility LLC*, No. 19-mc-00130 (S.D.N.Y.). There, Fractus is pursuing the SBA Communications Corporation ("SBA")—a company in the same industry as ATC—in virtually the same manner as Fractus is pursuing ATC ("SBA Matter"). According to the filings in that matter, Fractus served SBA with a subpoena on September 10, 2018. *SBA Matter*, SBA's Mot. to Quash, No. 19-mc-00130, at p. 2 (S.D.N.Y. Mar. 18, 2019) (ECF No. 1). SBA pushed back and Fractus agreed to withdraw the subpoena. *Id.* Then, without warning, Fractus issued a second subpoena on SBA on March 1, 2019. *Id*., at p. 3. SBA moved to quash the second subpoena

on March 18, 2019, and Fractus responded with its opposition and a cross-motion to compel on March 25, 2019. *Id.*; *SBA Matter*, Fractus's Oppo. to Mot. to Quash and Cross-Mot. to Compel, No. 19-mc-00130 (S.D.N.Y. Mar. 25, 2019) (ECF Nos. 6-7). Large swaths of Fractus's opposition and cross-motion in the SBA Matter are identical to its Opposition and Cross-Motion in the instant matter, which begs the question of why Fractus took an additional week to file its Opposition and Cross-Motion and then seek to force ATC to respond in two days' time.

**ARGUMENT**

**I. The Motions Should be Struck for Failing to Comply with the Letter and Spirit of Local Rule 7.1.**

Local Rule 7.1(a)(2) states that "No motion shall be filed unless counsel certify that they have conferred and have attempted in good faith to resolve or narrow the issue." Fractus admits that it did not confer with ATC, and instead merely certifies that it "attempted" to confer. Fractus did not satisfy the letter of the Rule, and for that reason alone, the Motions should be struck.

The Motions should also be struck because Fractus did not follow the spirit of the Rule when it made one call (that was almost immediately returned) and sent one email within 90 minutes of the filing deadline in an attempt to confer on the Motions. Although Local Rule 7.1(a)(2) does not explicitly define what is required to "confer," clearly some actual dialogue must take place. Case law on this Rule is sparse but what does exist indicates that there must at least be some sort of actual conversation. *See Gargano v. Vigilant Ins. Co.*, 494 Fed. Appx. 98, 102 (1st Cir. 2012) ("brief phone call" sufficient to satisfy Local Rule 7.1). This is in keeping with Local Rules in other Districts that define what is needed for a proper "meet-and-confer." For instance, the Eastern District of Texas (a jurisdiction with which counsel for Fractus should be familiar as that is where the underlying litigation is pending) "requires, at a minimum, a personal conference, by telephone or in person, between an attorney for the movant and an attorney for the non-movant." E.D. Tex.

Local Rule CV-7(h). Further, when courts have opined on "meet-and-confer" requirements they usually have required some type of conversation and found that exchanging letters or emails is insufficient. *See, e.g.*, *Greenwood v. Point Meadows Place Condo. Ass'n, Inc.*, No. 10-cv-1183-J-34TEM, 2011 WL 5358682, at *1-2 (M.D. Fla. Nov. 7, 2011) ("The spirit of [Local Rule directing parties to 'confer' before filing motions] requires the parties actually speak to each other in an attempt to resolve the disputed issues."). Fractus did not follow the spirit of Local Rule 7.1 when they made one phone call (that was promptly returned but not answered) and sent one email late on a Friday afternoon to counsel for ATC, who had explicitly indicated that she was willing and ready to confer during the two-week period between the filing of the Motion to Quash and the filing of Fractus's Motions. *See* O'Neil Decl., ¶ 11.

**II. In the Alternative, the Court Should Deny Fractus' Motion to Expedite Briefing**

If the Court declines to strike the Motions, ATC respectfully requests that it deny Fractus's Motion to Expedite Briefing because the schedule proposed seeks to force ATC to make up for Fractus's own dallying and would cause undue prejudice to ATC. ATC requests that it be granted the full fourteen days allowed by Local Rule 7.1(b)(2) (*i.e.*, less time than Fractus took to file its Opposition to the Motion to Quash) to file its Opposition to the Cross-Motion to Compel. Accordingly, ATC's Opposition should be due on April 15, 2019.

A. <u>Fractus's Baffling Timeline</u>

The entirety of Fractus's effort to extract burdensome and costly discovery from ATC (and apparently other entities) has been marked by Fractus's indolence. Last fall, Fractus agreed to take the proper step of seeking the discovery from the Defendants in the underlying litigation, but apparently failed to follow-through. Indeed, in the SBA Matter, Fractus acknowledged that it never even sought to compel the information it seeks from non-parties from the Defendants. *See*

*SBA Matter*, Fractus's Oppo. to Mot. to Transfer, No. 19-mc-00130, at p. 2 (S.D.N.Y. Mar. 25, 2019) (ECF Nos. 11) ("To date, no motions to compel any cell site information have been filed in the [underlying] Patent Litigation before the Eastern District of Texas, whether against the Carrier Defendants, the cell site landlords or anyone else."). Yet it now seeks to compel non-party ATC to potentially produce tens of millions of documents in an absurdly shortened timeframe.

The fact that Fractus has a discovery deadline looming in the underlying litigation is entirely a problem of its own making. Rather than stay in touch with ATC regarding the Defendants' production after it agreed to hold off on the September Subpoena, Fractus was completely silent until February 28, 2019, when it told counsel for ATC that it would serve the March Subpoena, which it did the following day. Bergendahl Decl., ¶ 5. At that point, Fractus apparently felt so rushed that it would not even agree to an extension of the response deadline without extracting concessions. *See* Bergendahl Decl., ¶ 8. Why Fractus stayed silent until then is a mystery as they presumably knew that they had not received the information it now seeks from ATC from the Defendants by at least February 8, 2019, the date upon which "Defendants were supposed to substantially complete their document productions." Fractus's Oppo. and Cross-Mot. to Compel, p. 10 (ECF No. 8).

Rather than be bullied into undergoing a costly document production that flaunts Fed. R. Civ. P. 45(d)(1)'s requirement that subpoenas not unduly burden non-parties, ATC filed a Motion to Quash on March 15, 2019. Mot. to Quash, (ECF No. 1). Based upon Fractus's repeated protestations that discovery in the underlying litigation was scheduled to close on April 15, 2019, one would think that Fractus would quickly respond. Alas, Fractus took the absolute maximum amount of time the Rules allowed (and indeed, more time than the Rules allow, *see supra* note 1) to file its Opposition and Cross-Motion to Compel, when it did so on April 1. Compounding the

head-scratching nature of this move, was Fractus's filing of the Motion to Expedite Briefing on the same day. This motion proposed to give ATC just two days to file its opposition to its Cross-Motion to Compel because of the discovery deadline in the underlying litigation. In sum, despite the supposed urgent nature of its discovery requests, Fractus took more than two weeks to file its Opposition to ATC's Motion to Quash and now seeks to force ATC to file its Opposition to its Cross-Motion to Compel in two days' time, even though ATC is a non-party and accordingly is entitled to "special weight" in discovery matters. *See Cusumano v. Microsoft Corp*., 162 F.3d 708, 717 (1st Cir. 1998). ATC should not be made to make up time that was lost simply because of Fractus's indolence.

B. The Shifting Nature of Fractus's Requests

In its Motion to Expedite, Fractus claims that ATC's Opposition "will essentially be a reply brief in further support of its motion to quash." Mot. to Expedite Briefing, at p. 2 (ECF No. 13). This misstates the nature of Fractus's Cross-Motion to Compel on both a procedural and substantive level.

Procedurally, based on its conduct in this matter and the SBA Matter, ATC has strong reservations that Fractus will treat its opposition to its Cross-Motion compel as a "reply brief." ATC notes that in the SBA Matter Fractus took the opportunity to file its own "reply" to SBA's opposition to its cross-motion to compel. *See SBA Matter*, Reply in Supp. of Cross-Mot. to Compel, No. 19-mc-00130, at p. 2 (S.D.N.Y. Apr. 1, 2019) (ECF Nos. 23).

Substantively, the Cross-Motion to Compel is not merely an argument that the March Subpoena does not place an undue burden on ATC; rather, it contains a modified discovery request without modifying or offering to modify the underlying subpoena. On pages two and three of its Cross-Motion to Compel, Fractus argues for the first time that it is seeking two "data points."

Although the "data points" requested may overlap with some of the discovery sought in the September and March Subpoenas, it is fundamentally a new request that adds ever more confusion and uncertainty to ATC's potential obligations. Accordingly ATC would be prejudiced if it had to respond to the Cross-Motion to Compel in two days' time without thoroughly evaluating what Fractus is seeking with these brand-new requests.

Fractus has apparently dawdled through discovery in the underlying litigation and continues to do so in this matter. It seeks to make up for this dawdling by causing prejudice to ATC by forcing it to respond to its Cross-Motion to Compel in two days. ATC respectfully requests that the Court not tolerate this conduct, deny the Motion to Expedite Briefing, and allow ATC until April 15, 2019 to file its Opposition to the Cross-Motion to Compel.

**REQUEST FOR ATTORNEY'S FEES AND COSTS**

ATC respectfully requests that this Court grant it its costs and attorney's fees associated with preparing and filing this motion as a sanction against Fractus for failing to comply with the Local Rules. *See Accusoft Corp. v. Quest Diagnostics, Inc*., No. 12-cv-4007-TSH, 2014 WL 1393749, at *1-2 (D. Mass. Apr. 7, 2014) (ordering moving party to pay non-moving party's "reasonable expenses, including attorney's fees" pursuant to Local Rule 1.3 where moving party failed to confer prior to filing motion).

**CONCLUSION**

The Motions should be struck because Fractus failed to follow both the letter and the spirit of Local Rule 7.1 when it filed the Motions without conferring with counsel for ATC. In the alternative, the Court should deny the Motion to Expedite and allow ATC until April 15, 2019 to file its Opposition to the Cross-Motion to Compel. In either scenario, ATC should be awarded its attorney's fees and costs.

Respectfully submitted,

NON-PARTY AMERICAN TOWER CORPORATION

By its attorneys,

Dated: April 2, 2019

/s/ Allison M. O'Neil
Allison M. O'Neil (BBO # 641330)
Douglas R. Sweeney (BBO # 694319)
LOCKE LORD LLP
111 Huntington Avenue
Boston, MA 02199
617-239-0100
allison.oneil@lockelord.com
douglas.sweeney@lockelord.com

**LOCAL RULE 7.1 CERTIFICATION**

In accordance with Rule 7.1, counsel certifies that counsel for ATC conferred with the counsel for Fractus and attempted in good faith to resolve or narrow the issues.

/s/ Allison M. O'Neil

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on the 2nd day of April 2019, this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be delivered by regular mail to those indicated as non-registered participants.

/s/ Allison M. O'Neil